PEOPLE ex rel. SWAN v. DOXSEE et al.

(Supreme Court, Special Term, Kings County. October, 1909.)

1. TOWNS (§ 35*)—USE OF PUBLIC PROPERTY—DOCKS—POWER OF TRUSTEES.

Where a town, as authorized by Laws 1903, c. 455, purchased a dock for public use, taking title in the name of the trustees of the town, the trustees could give exclusive possession to a portion of the dock for the benefit of the town, unless the public right of user was interfered with; but they could not give exclusive possession thereof to any individual or corporation, nor divert it to a use foreign to dockage purposes, nor lease it for a term, so as to deprive the town or trustees of the power of controlling its use, or of removing obstructions placed thereon, on the public need demanding the space.

[Ed. Note.—For other cases, see Towns, Dec. Dig. § 35.*]

2. TOWNS (§ 35*)—USE OF PUBLIC PROPERTY—DOCKS—POWER OF TRUSTEES.

The trustees of a town, having power under Laws 1903, c. 455, to regulate a dock purchased by the town for public purposes, may give constant users of the dock for a purpose for which it was purchased exclusive possession of a part thereof.

[Ed. Note.—For other cases, see Towns, Dec. Dig. § 35.*]

Mandamus by the People, on the relation of A. S. Swan, against John L. Doxsee and others, to compel defendants, as trustees of the town lands of the town of Islip, to remove an icehouse from a public dock. Application denied.

See 120 N. Y. Supp. 962, reversing the order.

Coombs & Wilson, for relator.

Elliott J. Smith (Baylis & Sanborn, of counsel), for defendants.

CRANE, J. Chapter 503, Laws 1857, cedes to the town of Islip the interest of the people of the state of New York in certain lands within said town, and provides (section 3):

"The electors of the town of Islip shall, at the annual meeting in each and every year hereafter, choose three trustees, who shall have the charge of the lands of said town under such legal rules and regulations as may from time to time be made by said electors."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Chapter 455, Laws 1903, was passed to enable the town of Islip to acquire docks and landing places for public use and to borrow money for that purpose. Section 2 reads:

"The title to all such docks and landing places, so purchased, shall be taken for the use of said town, in the name of the trustees of town lands of said town, as created by chapter 503 of the Laws of 1857, and such trustees and their successors in office shall have the charge and supervision of all such docks, bulkheads and landing places, and the power to prescribe rules and regulations for the use thereof by the public," etc.

In August, 1903, the town purchased for $10,000 "Doxsee's Dock"; title being taken in the name of the trustees then in office. On January 1, 1909, a lease was made by the trustees to the Live Fish Company of Long Island, granting them, for the yearly rental of $100 for the term of 10 years, a very small portion of this dock for an icehouse and platform necessary in the fish business. The dock in question is about 365 feet long and 103 feet wide; the icehouse and platform occupying one-eighteenth part of the dockage area, and that near the shore.

Many of the citizens of Islip carry on the fish business, and Doxsee's Dock is used as a landing place for fishing boats, pleasure boats, and freight boats. The icehouse, it is alleged, was constructed about 1904 by one Willard W. Clock, whose business the Live Fish Company took over shortly prior to January 1, 1909, and who occupied this portion of the dock under a lease from the trustees similar to that above mentioned. The relator, Alden S. Swan, is a property owner of Islip, and seeks from this court a mandamus compelling the removal of the icehouse and platform (the latter waived on argument), on the ground that the lease is illegal, and gives exclusive possession to a portion of the dock, contrary to law. After having read every authority submitted by counsel, too numerous to cite here, I have come to the following conclusion:

Doxsee's Dock is held by the trustees for the use of the public, and they (the trustees) would have no right to give exclusive possession thereof to any individual or corporation. Neither would they have a right to divert it to a use foreign to dockage purposes. But, unless the public right of user and convenience is interfered with, the trustees would have the power to give exclusive possession to a portion of the dock for the benefit of the town. They could not, in my opinion, lease it for 10 years, so as to deprive the town or its trustees of the power of regulating and controlling its use, or from removing the icehouse and platform altogether, should public need demand the space. N. Y. Mail & Newspaper Trans. Co. v. Shea, 30 App. Div. 266, 51 N. Y. Supp. 563; Ill., etc., Canal Co. v. St. Louis, 2 Dill. 70, Fed. Cas. No. 7007; Belcher Sugar Ref. Co. v. St. Louis Grain El. Co., 82 Mo. 121; Pike's Peak Co. v. City of Colorado Springs, 105 Fed. 1, 44 C. C. A. 333.

It is unnecessary for me to decide the validity or invalidity of this lease, as there is no statement or allegation that this icehouse and platform in any way interferes with the public or relator's use of the dock. As before intimated, if the trustees should decide that the public needs require the space for public use or change in conditions, the

lease could not stand in the way. However, as the trustees have power under the act of 1903 to regulate the use of the dock, and as the work which the Live Fish Company does on this dock by means of this icehouse and platform is a kind of work for which this dock was purchased, and is a use to which the public and this company may legitimately put this dock, I do not consider it beyond the power of the trustees to regulate matters by giving constant users exclusive possession of part.

It has been argued that no lease will be valid unless authorized by a town meeting; but, as the town authorities have accepted rental since 1904, this objection might be of little avail. However, as it is unnecessary to pass on the validity of this lease, because I consider the present occupation and user of the dock and icehouse by the Live Fish Company in no way illegal, I shall not attempt to decide this point.

It necessarily follows, from what I have said, that the relator's application must be denied.

Application denied.